UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
**RAYMOND CANARIO**,

                              Plaintiff,          **CIVIL CASE NUMBER** _____

                                                  **COMPLAINT**

        -against-

                                                  **JURY TRIAL DEMANDED**
                                                  **ECF CASE**

**The Couty of Rockland, The Rockland County District
Attorney's Office, Hon. Thomas E. Walsh II, in his
Official Capacity as District Attorney and Individually,
Patrick Frawley, in his Official Capacity as Chief
Assistant District Attorney and Individually, Ryan
Sweeney, in her Official Capacity as Assistant District
Attorney and Individually, Michael Duganzsic, in his
Official Capacity as Senior Assistant District Attorney
and Individually, Peter Walker, in his Official Capacity
as Chief Criminal Investigator and Individually,
Matthew Wohl, in his Official Capacity as Investigator
and Individually, The Town of Clarkstown, Clarkstown
Police Department, and John Does (Fictitious names
intended to be additional Parties not yet known, the
Identity and Number of Whom is Presently Unknown to
Claimant) in their Official Capacities and Individual**,

                              Defendants.
-------------------------------------------X

        Plaintiff, RAYMOND CANARIO, by his attorneys, German Rubenstein LLP,

complaining of the Defendants, respectfully alleges as follows:

                    **PRELIMINARY STATEMENT**

        1.    Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil

rights, as said rights are secured by said statutes, and the Constitutions of the State of New York

and the United States.

        2.    On June 29, 2021, Defendants, without probable cause, arrested Plaintiff in

connection with his work his work for Spring Valley as an Assistant Building Inspector. Plaintiff's arrest came after a fire at a senior home claimed the lives of a resident of such home and a local volunteer firefighter. Defendants falsely (criminally) processed Plaintiff, published false and defamatory statements regarding the false arrest through the media, and commenced a campaign to prosecute Plaintiff for felony and misdemeanor charges as the result of politically inspired pressure to hold someone accountable for the death of the volunteer firefighter.

3.      On or around March 14 and March 17, 2023, Rockland County Judge Kevin Russo dismissed all felony and misdemeanor charges brought by the Rockland County District Attorneys' Office against Ray Canario. After dismissal, Defendant Walker released another statement relating to the cases of Mr. Canario and Plaintiff. Mr. Walker's statement read: "The yearslong disorganization and disfunction of the Spring Valley Building Department served as a defense in these cases. The court chose not to hold these defendants accountable for their role in the malfeasance in the building department. We disagree with the Court's decision and are disappointed in it."

4.      Defendants' false arrest, malicious prosecution, violation of civil rights, and defamation, as well as Defendants' negligent hiring, supervision, and retention of employees have caused Plaintiff to suffer severe injuries, including, but not limited to: loss of income, the cost of legal and related expenses, emotional and psychological trauma; humiliation and embarrassment; loss of reputation; legal fees.  Plaintiff seeks compensation for these injuries and punitive damages related to Defendants' conduct.

## JURISDICTION

5.      This action is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §1988 and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, along

with the common law and Constitution of the State of New York.

6.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

## VENUE

7.    Venue is properly laid in the Southern District of New York under U.S.C. §1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

8.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## CONDITIONS PRECEDENT

9.    On or about June 9, 2023, Plaintiff served a satisfactory notice of claim on:

A.  The County of Rockland,

B.  Rockland County District Attorney's Office,

C.  Rockland County Sherriff's Patrol,

D.  Rockland County Sherriff's Office,

E.  The Town Clarkstown,

F.  The Clarkstown Police Department,

G.  Mathew Wohl,

H.  Peter Walker,

I.  Michael Duganzsic,

J.  Ryan Sweeney,

K.  Patrick Frawley,

L.  Hon Thomas E Walsh II, and

10.    On May 8, 2024, Plaintiff sat for a 50-h hearing with respect to conducted by

counsel for Defendants.

11.    Plaintiff complied with all demands for and requirements to appear for a medical examination or to provide medical records/HIPPA authorizations.

12.    Defendants have made no offer to settle this matter.

## PARTIES

13.    Plaintiff, Raymond Canario, is a citizen of the United States, and at all relevant times a resident of the State of New York.

14.    Defendant the County Of Rockland ("Rockland") is a municipal corporation of the State of New York and is a resident of the Southern District of New York.

15.    Rockland County District Attorney's Office ("Rockland's DA's Office"), an agency of Defendant Rockland, employs district attorneys and investigators for whom it is legally responsible for any torts committed within the scope of their employment and/or under color of law. Defendant Rockland's DA's Office is also responsible for the hiring, supervision, and retention of its employees.

16.    Defendant Hon. Thomas E. Walsh II ("Walsh") – in his Official Capacity as District Attorney and Individually – was, at all relevant times, the District Attorney for Defendant Rockland. Defendant Walsh acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and acted within the scope of his employment. Defendant Walsh is sued in his individual and his official capacities.

17.    Defendant Patrick Frawley ("Frawley") – in his Official Capacity as Chief Assistant District Attorney and Individually – was, at all relevant times, was, at all relevant times, an assistant District Attorney for Defendant Rockland. Defendant Frawley acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York

and acted within the scope of his employment. Defendant Frawley is sued in his individual and his official capacities.

18.    Defendant Ryan Sweeney ("Sweeney") – in her Official Capacity as Chief Assistant District Attorney and Individually – was, at all relevant times, was, at all relevant times, an assistant District Attorney for Defendant Rockland. Defendant Sweeney acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and acted within the scope of his employment. Defendant Sweeney is sued in her individual and his official capacities.

19.    Defendant Michael Duganzsic ("Duganzsic") – in his Official Capacity as Chief Assistant District Attorney and Individually – was, at all relevant times, was, at all relevant times, an assistant District Attorney for Defendant Rockland. Duganzsic acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and acted within the scope of his employment. Defendant Duganzsic is sued in his individual and his official capacities.

20.    Defendant Peter Walker ("Walker") – in his Official Capacity as Chief Criminal Investigator and Individually – was, at all relevant times, the Chief Criminal Investigator for Defendant Rockland. Defendant Walker acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and acted within the scope of his employment. Defendant Walker is sued in his individual and his official capacities.

21.    Defendant Matthew Wohl ("Wohl") – in his Official Capacity as Investigator and Individually – was, at all relevant times, the Investigator for Defendant Rockland. Defendant Wohl acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and acted.

22.    Defendant the Town of Clarkstown ("Clarkstown") is a municipal corporation of the State of New York and is a resident of the Southern District of New York.

23.    Clarkstown Police Department ("Clarkstown PD"), an agency of Clarkstown, employs police officers and investigators for whom it is legally responsible for any torts committed within the scope of their employment and/or under color of law. Defendant Clarkstown PD is also responsible for the hiring, supervision, and retention of its employees.

24.    Defendant JOHN DOES 1-10 ("Doe Defendants") are Fictitious Names Intended to be Additional Parties Not Yet Known. Plaintiff will add the names of these individuals as they become available through discovery or otherwise.

25.    All defendants are hereinafter referred to, collectively, as the "Defendants."

## FACTS[1]

### Background

26.    In response to certain issued raised to the New York State Department of State by the Rockland County Illegal Housing Task Force, the Department of State's Division of Building Standards and Code (the "Division of Building Standards and Code") reviewed certain aspects of the Spring Valley's program for administration and enforcement of Spring Valley's Code Enforcement Program.

27.    As a result of such review, the Secretary of State (A) determined that Spring Valley was not, or had not been, complying with the minimum standards relative to fire safety and property maintenance inspections, (B) established a code enforcement program in compliance with state law, (C) required owners of buildings to obtain building permits; and (4) most significantly, established and record keeping system relating to the code enforcement

---

[1] Many of the facts herein track those set forth and alleged in Wayne Ballard v The County of Rockland, et al, Case 7:24-cv-02944-CS.

activities.

28.    In connection therewith, the Secretary of State ordered Spring Valley to:

A.  compile a list of all: (i) buildings in Spring Valley that contain an area of public assembly, (ii) dormitory buildings in Spring Valley, and (iii) all buildings in Spring Valley currently being used as nonpublic schools;

B.  develop a schedule for conducting fire safety and property maintenance inspections of all such buildings in compliance with state law;

C.  develop and implement a system to keep such list accurate;

D.  submit an inspection list, together with a schedule for such inspection and description of policies and practices for keeping the inspection list accurate and current; and

E.  review, and submit a written report of, its findings, to determine if it complies with state law and, to the extent it does not fully comply with state law, to take such steps as may be required to modify Spring Valley Code Enforcement Program, so that it complies with state law.

**Spring Valley's Hiring of Plaintiff**

29.    In or around April 2019, Plaintiff was hired by Mayor Alan Simon to the position of Assistant Building Inspector ("ABI").  Prior thereto, Plaintiff worked for the Spring Valley Department of Public Works, as a Motor Equipment Operator 1.

30.    When Plaintiff was hired as the ABI, the Village of Spring Valley's code enforcement officers and fire inspectors were overworked and understaffed and they couldn't appropriately inspect most of the buildings in the Village of Spring Valley.

31.    Moreover, the Building Department records were in total disarray.

32.     Plaintiff himself had no experience as an ABI and was supposed to report to the Building Inspector, however, such position was vacant.

33.     Thus, there was no direction, supervision, or guidance from within the Building Department.

## Title 19 NYCRR Part 1203

34.     Title 19 NYCRR Part 1203 requires every city, village, town, and county, charged with administration and enforcement of the NYS Uniform Fire Prevention and Building Code (Uniform Code) to annually submit a report ("1203 Report") of its activities to the Secretary of State.

35.     Any municipality that is doing direct enforcement of the Uniform Code, by orders of the Secretary of State, must submit an annual report every year.  The 1203 Report is submitted by a code official, who is hired by a municipality.

36.     With respect to Fire Safety and Property Maintenance Inspections, the 1203 Report must include: the total number of (A) buildings containing one or more areas of public assembly and how many had been and had not been inspected in the year prior, (B) buildings containing three or more dwelling units and how many had been and had not been inspected in the year prior, (C) nonresidential buildings, and (D) how many within each category had been and had not been inspected in the relevant calendar year.

37.     In completing the 1203 Report, code officials rely on records provided by other employees, as the code official that completes the 1203 Report, by definition, did not have the time, ability, or resources to independently verify the information contained in the documents upon which he or she relied.

38.     If the information in the underlying records is inaccurate, it is impossible for a

code official to accurately complete a 1203 Report.

39.     Shortly after being hired, Plaintiff was assigned to file 1203 Reports in an attempt to bring Spring Valley into compliance with the Secretary's Order.

40.     Plaintiff, however, had no experience in completing such forms.  The position of Building Inspector, Plaintiff's direct supervisor, was vacant, so Plaintiff was unable to obtain guidance from any supervisor.

41.     Moreover, prior to Plaintiff being hired by Spring Valley, New York State had monitors in the Spring Valley Building Department to make sure Spring Valley's Building Department was functioning properly.

42.     Plaintiff did seek guidance in writing and on numerous occasions from the state monitors on how to complete the 1203 Reports.

43.     Plaintiff also advised the State of the difficulties that he was having completing the 1203 Report.  Despite Plaintiff seeking guidance  and copies of prior 1203 Reports from such monitors, however, no guidance or examples were provided.  Defendants were aware of this, and possessed emails in which guidance was sought, prior to arresting Plaintiff.

44.     Plaintiff filled out the Form 1203 based upon charts noting inspection status provided by the staff– not from personal visits and investigations, believing that the records accurately reflected the Code Enforcement Officials' inspections.

45.     Moreover, the 1203 Reports indicate reflected that such Reports were submitted with the State's understanding of the difficulty in completing such reports.  Such information was known to Defendants before the Grand Jury was impaneled.

46.     For example, Grand Jury Exhibit 3, Raymond Canario's 1203 Report Year 2017, asks if there is any additional material that may prove helpful in processing the form or

interpreting the responses. Plaintiff responds that, at the present time, we have new assistant building inspector being hired as well as 1 fire safety inspector and a code enforcer. 2019. This information was provided to reflect the "plan" that the State and Village had prepared and what step they were taking to get the Village in compliance with the Code and to properly update and complete 1203 Reports, including 1203 Reports for time periods prior to Plaintiff's employment..

47.    Grand Jury Exhibit 4, Raymond Canario's 1203 Reporting Year 2018, indicates that the numbers reported in this Report were estimates.

48.    Grand Jury Exhibit 7, Raymond Canario's email to the monitor regarding the submission of the 1203 Reporting Year 2020, "that all information is an estimate due to the inventory issue that my staff has been working on correcting... the 1203 inspections are an estimate to the best of my ability." See Grand Jury Minutes p. 20, 21.

49.    Despite orders of the Secretary of State to complete 1203 Reports, Spring Valley failed to file the annual 1203 Report for the years 2013 through 2016.  Moreover, nobody could locate the 1203 Report for 2017 or even knew that one had been filed.

50.    No one was prosecuted by any government/law enforcement agency for failing to file an annual 1203 Report for the years 2013 through 2016.

51.    But Plaintiff, who submitted 1203 Reports based on underlying information provided to him by others, was charged.

**The Fire and Subsequent Prosecution**.

52.    On March 23, 2021, a fire, started by the use of a blowtorch in preparation for Passover, swept through the Evergreen Courts Home for Adults, located at 65 Lafayette Street in Spring Valley, New York.

53.     Plaintiff, a former fire chief in the Spring Valley Volunteer Fire Department, battled the fire with dozens of other volunteers who removed 112 people from Evergreen.

54.     Firefighter Second Lt. Jared Lloyd, 35, and an adult resident, Oliver Hueston, 79, died in the inferno at the Lafayette Street facility.

55.     The Spring Valley Police Department investigated the fire, and concluded such investigation without arresting and/or indicting Plaintiff.

56.     Upon information and belief, during the Spring Valley Police Department's investigation, it was determined that there was no basis to arrest Plaintiff for any crimes.

57.     The local media was pressuring DA Walsh to punish someone for the deadly fire.

58.     After the Spring Valley Police Department concluded its investigation, the Rockland's DA's Office took up the criminal investigation with DA Walsh promising that the investigation was not over and would continue into the events that led to the tragic catastrophe and underlying governmental malfeasance.

59.     Notwithstanding that the police department normally lead the investigation, the Individual Defendants controlled the investigation of Plaintiff for Rockland County.

60.     Upon information and belief, before arresting Plaintiff, Defendants sought to have a detective with Spring Valley to sign the arrest/accusatory instrument in June of 2021.  Such detective, however, refused to sign the false accusatory.  Defendants possessed this information prior to falsely arresting and prosecuting Plaintiff.

61.     On June 29, 2021, Plaintiff was arrested and given a desk appearance ticket without probable cause.

62.     Plaintiff's arrest was publicized by the media.  An article by Fox 5 NY, dated June 29, 2021, stated, in relevant part: "Rockland County buildings inspector Wayne Ballard and

deputy inspector Raymond Canario are charged with falsely filing reports to the state regarding

fire inspections." District Attorney Walsh was quoted as saying: "Make no mistake – this

investigation is not over and will continue into the events that led to this tragic catastrophe and

underlying governmental malfeasance."

63.    Defendants falsely accused Plaintiff of filing a false 1203 Reports in 2017, 2018,

and 2020 with New York State.

64.    Plaintiffs' 1203 Reports did not indicate, and were not intended to indicate,

whether Evergreen Court had been inspected in 2017 or thereafter.

65.    Moreover, Individuals other than Plaintiff provided the information and records

relied upon by Plaintiff in completing the 1203 Reports.

66.    Defendants also presented false evidence to the Grand Jury in connection with

Plaintiff's indictment and withheld relevant evidence with respect to testifying witnesses.

67.    The trial also highlighted the poorly managed Spring Valley Building

Department, in particular its dysfunctional when it came to enforcing state fire and building

codes and reports.

68.    In fact, the State's own witness testified that he did not recommend arresting

Plaintiff. Specifically, John Addario, the director of buildings, standards code, and defense

witness testified that Spring Valley's filing system was a mess and its computer program failed.

He further testified that, despite Spring Valley's enforcement problems, he never referred Spring

Valley inspectors for criminal investigation or suggested inspectors should be suspended or lose

their certification.

69.    As this was a prosecution witness, Defendants possessed this information prior to

falsely arresting and prosecuting Plaintiff.

70.     As a result of the arrest, indictment, and prosecution, , Plaintiff was overwhelmed with the press, cable, and television coverage. He had calls and emails from the press trying to reach him.

71.     As a result of the false arrest, indictment, and press coverage, Plaintiff's employment opportunities suffered.  Plaintiff was intended to receive a promotion, which was denied.  Plaintiff was also fired from his positions as Code Enforcement Official at Wesley Hills and Building Inspector for New Hempstead.

### *The Individual Defendants are Being Sued as Investigators*

72.     Under tremendous political pressure the Defendants and Individual Defendants took over the investigation.

73.     On April 1, 2021, District Attorney Walsh announced at a press conference, "We have assembled today the investigative leaders from federal state and local law enforcement agencies pursuing this inquiry into the cause of the Evergreen Fire."

74.     According to the Lohud.com article titled: Spring Valley raid raises hopes of expanded probe of corruption, lack of code enforcement, dated June 26, 2021, Defendant Walker "said the office will not discuss the details of the raid of the scope of the investigation."

75.     The article quoted Walker saying, "I think the operation was a success…."

76.      In that article, Defendant Walker said, "We certainly have things we have to go through… It's just another part of this extremely intensive and aggressive investigation."

77.     According to the Lohud.com article titled Spring Valley fire: Two building inspectors among 6 charged; two accused of manslaughter, dated June 30, 2021...

78.     That same article quoted District Attorney Walsh, saying, "Today is the culmination of a multi-agency investigation that left no stone unturned."

79.    Thus, the Individual Defendants are being sued as investigators - not as prosecutors, etc.

80.    The Individual Defendants had Plaintiff falsely arrested and prosecuted for crimes including under NYS Penal Law Section 175.35(1) Offering a False Instrument for Filing in the First Degree; under NYS Penal Law Section 175.30 Offering a False Instrument for Filing in the Second Degree; and under NYS Penal Law Section 175.05(1) Falsifying Business Records in the Second Degree, without probable cause.

81.    The criminal complaints filed by the Rockland County's District Attorney's Office accuse Plaintiff of filing reports with the intent to defraud the state. The complaint against Plaintiff falsely claimed that Plaintiff filed these reports to the Department of State knowing and believing that each contained false statements and false information.

82.    At trial, no evidence was presented to show Plaintiff filed the 1203 Reports knowing or believing that such 1203 Reports contained any false statement or false information.

83.    Defendant Wohl, an ex-NYPD officer and investigator for Defendant Rockland County, worked on the team that investigated Plaintiff and caused him to be arrested and/or prosecuted without probable cause.

84.    Upon information and belief, prior to being hired by the Rockland County District Attorney's Office, Defendant Wohl made false statements under oath in direct contrast to the video of the actual incident.

85.    According to a November 26, 2022 New York Post article titled "Ex-NYC" Cop Who Allegedly Lied Under Oath Gets $95k Gig With DA,", Defendant Wohl claimed that during the Republican National Convention in 2004, Defendant Wohl helped carry a protester kicking and screaming down the steps of the New York Public Library.

86.     According to that same article, the video evidence showed that the protester was reportedly shown walking down the stairs without any officers in sight.

87.     According to a November 27, 2022 Rockland County Business Journal article titled "Retired Cop Who Allegedly Lied Under Oath in NYC Case Lands Job at Rockland County DA's Office" the charges against the protester were dropped by the prosecutor's office.

88.     According to 50-a.org, Defendant Wohl is listed on the New York City District Attorney offices list for officers with potential credibility problems and adverse credibility ruling by judges.

89.     Despite this information being publicly available, Defendant Rockland County still hired Defendant Wohl and maintained his employment.

90.     Upon information and belief, the Individual Defendants did not produce a single document from the Spring Valley Police Department to defense counsel.

91.     "We are saddened and disappointed by Judge Russo's decision," Defendant Walsh said after the dismissal. "The people believe that sufficient evidence was presented to establish the defendant's guilt beyond a reasonable doubt."

92.     Plaintiff has suffered profound and lasting injury as a result of Defendants' fabrication of evidence, as well as Defendant Rockland's negligent hiring, supervision, and retention (and responsibility under the theory of respondeat superior), including, but not limited to, the following: emotional and psychological trauma (severe anxiety, depression, and personality change); PTSD; humiliation and embarrassment; loss of reputation; loss of income, including but not limited to, a reduction in retirement income; legal fees; medical expenses; and punitive damages.

93.     Plaintiff has been shunned by members of his community, members of the Spring

Valley Volunteer Fire Department, as a result of the false charges and accusations.

94.    Plaintiff seeks redress for falsely accusing Plaintiff when Defendants knew such allegations to be true, giving false, misleading, and incomplete testimony before the Grand Jury to secure an indictment, publicizing the allegations, arrest, and indictment for political purposes and causing sever and irreparable harm and financial injury through  false arrest, malicious prosecution, violation of civil rights, and defamation, as well as Defendants' negligent hiring, supervision, and retention of employees  have caused Plaintiff to suffer severe injuries, including, but not limited to: loss of income, the cost of legal and related expenses, emotional and psychological trauma; humiliation and embarrassment; loss of reputation; legal fees. Plaintiff seeks compensation for these injuries and punitive damages related to Defendants' conduct.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983**
**(as to all Defendants)**

95.    Plaintiff repeats, reiterates and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

96.    All of the aforementioned acts of Defendants, their agents, servants, and employees, collectively and individually, while acting under the color of state law, violated the Constitution of the United States.

97.    All of the aforementioned acts deprived Plaintiff, Raymond Canario, of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

98.    Defendants, collectively and individually, while acting under color of state law,

engaged in conduct which is forbidden by the Constitution of the United States.

99.     The acts complained of deprived Plaintiff, Raymond Canario, of his rights:

    a.   Not to have excessive force imposed upon him;

    b.   Not to have summary punishment imposed upon him; and

    c.   Not to be falsely arrested and prosecuted;

    d.   To receive equal protection under the law.

100.    As a result of the foregoing, Plaintiff, Raymond Canario, sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

## SECOND CLAIM FOR RELIEF
## <u>FALSE ARREST UNDER 42 U.S.C. § 1983</u>
### (as to all Defendants)

101.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

102.    As a result of Defendants' aforementioned conduct, Plaintiff, Raymond Canario, was subjected to an illegal, improper, and false arrest by the Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and/or prosecuted by the Defendants in criminal proceedings, without any probable cause, privilege or consent.

103.    As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

104.    The Defendants arrested Plaintiff and intended to confine him.

105.    At all times, the Defendants, including the Individual, acted under color of state

law and within the scope of employment.

106.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

**THIRD CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**
**(as to all Defendants)**

107.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

108.    Upon information and belief, Defendants misrepresented and falsified evidence before the Grand jury and forwarded such information to the District Attorney.

109.    Upon information and belief, Defendants did not make a complete and full statement of facts to the District Attorney and/or Grand Jury.

110.    Upon information and belief, Defendants withheld exculpatory evidence from the District Attorney and Grand Jury.

111.    Upon information and belief, Defendants misrepresented and falsified evidence before the Grand Jury.

112.    Upon information and belief, Defendants did not make a complete and full statement of facts to the Grand Jury. Defendants withheld exculpatory evidence from the Grand Jury.

113.    Upon information and belief, Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff.

114.    Upon information and belief, Defendants lacked probable cause to initiate

criminal proceedings against Plaintiff.

115.    Upon information and belief, Defendants acted with malice in initiating criminal proceedings against Plaintiff.

116.    Upon information and belief, Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff.

117.    Upon information and belief, Defendants lacked probable cause to continue criminal proceedings against Mr. Guzman.

118.    Upon information and belief, Defendants acted with malice in continuing criminal proceedings against Plaintiff.

119.    Upon information and belief, Defendants misrepresented and/or falsified evidence throughout the criminal proceedings.

120.    The Individual Defendants instituted criminal proceedings against Plaintiff.

121.    The Individual Defendants lacked probable cause to bring the criminal proceedings.

122.    The Individual Defendants acted with actual malice by bringing the criminal proceedings with intent to harm Plaintiff.

123.    The criminal proceedings terminated with a decision in Plaintiff's favor by way of being acquitted of all charges or having charges dismissed.

124.    At all relevant times, the Individual Defendants acted under color of state law and within the scope of employment

125.    Notwithstanding the above, the above charge and criminal proceeding was disposed of on May 14, 2023 and May 17, 2023, when the charges against him were dismissed and or for which he was found not guilty.

126.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

127.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

### FOURTH CLAIM FOR RELIEF
### <u>MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C.§ 1983</u>
### (as to all Defendants)

142.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

143.    Defendants issued legal process to place Plaintiff, Raymond Canario, under arrest.

144.    Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

145.    Defendants acted with intent to do harm to Plaintiff Raymond Canario, without excuse or justification.

146.    Defendants issued legal process notwithstanding that detective(s) in Spring Valley refused to sign the arrest/accusatory instrument.

147.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

### FIFTH CLAIM FOR RELIEF DENIAL OF FAIR TRIAL UNDER 42 U.S.C. §
### <u>1983 DUE TO EXTRAJUDICIAL STATEMENTS MADE BY WALSH</u>

148.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

the paragraphs above as if the same were more fully set forth at length herein.

149.    Defendant Walsh made extrajudicial statements to the press regarding Plaintiff.

150.    Defendant Walsh's extrajudicial statements were not made for the purpose of carrying out his official duties, responsibilities, or functions as District Attorney of Rockland County.

151.    Rather, Defendant Walsh made such extrajudicial statements in order to create a "high-profile" case that would advance bis own career goals.

152.    Defendant Walsh knew that bis extrajudicial statements about Plaintiff were false and misleading.

153.    Defendant Walsh knew that bis extrajudicial statements about Plaintiff would be reported by various media outlets, including newspapers, radio stations and television networks, as well as on the Internet, where it would reach an audience of thousands of people.

154.    Defendant Walsh knew that his extrajudicial statements about Plaintiff would create a highly prejudicial and inflamed atmosphere against Plaintiff.

155.    As a result of Defendant Walsh's extrajudicial statements to the press, Plaintiff was the subject of extensive and highly prejudicial news coverage.

156.    This extensive news coverage had a profound impact on both the prosecution and defense.

157.    As a result of Walsh's extrajudicial statements to the press, the prosecution (Defendants) felt compelled to continue their case against Plaintiff knowing that there were enormous holes in their case, and that they would not be able to obtain a conviction - out of concern that dismissing this "high-profile" case would be extremely damaging to Defendant Walsh.

158.    As a result of Walsh's extrajudicial statements to the press, the defense was forced to waive Plaintiff's constitutional right to trial by jury, due to concerns that the extensive adverse publicity would prevent a jury from being fair and impartial.

159.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

**SIXTH CLAIM FOR RELIEF DENIAL OF FAIR TRIAL UNDER 42 U.S.C. § 1983**
**(as to all Defendants)**

160.    Plaintiffs repeat and reallege each and every allegation contained in the aforementioned Paragraphs, as though fully set forth herein.

161.    The Defendants, including the Individual Defendants, instituted criminal proceedings against Plaintiff.

162.    The Defendants, including the Individual Defendants, lacked probable cause for the criminal proceedings.

163.    The Defendants, including the Individual Defendants, failed to turn over any documents from the Spring Valley police department, even though the police were part of the investigation and had documents to produce.

164.    The Defendants, including the Individual Defendants, acted with actual malice by bringing the criminal proceedings with intent to harm Plaintiff.

165.    The criminal proceedings terminated with a decision in Plaintiff's favor by way of being acquitted of all charges or having such charges dismissed.

166.    At all relevant times, Defendants, including the Individual Defendants, acted under color of state law and within the scope of employment.

167.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

167.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

**SEVENTH CLAIM FOR RELIEF**
**"STIGMA PLUS" CLAIM UNDER 42 U.S.C. § 1983 DUE TO**
**<u>EXTRAJUDICIAL STATEMENTS MADE BY WALSH</u>**

168.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs above as if the same were more fully set forth at length herein.

169.    Defendant WALSH made extrajudicial statements to the press regarding Plaintiff.

170.    Defendant WALSH's extrajudicial statements were not made for the purpose of carrying out bis official duties, responsibilities, or functions as District Attorney of Rockland County.

171.    Defendant WALSH made such extrajudicial statements in order to create a high-profile case that would advance his own career goals.

172.    Defendant WALSH knew that his extrajudicial statements about Plaintiff were false and misleading.

173.    Defendant WALSH knew that his extrajudicial statements about Plaintiff would be reported by various media outlets, including newspapers, radio stations and television networks, as well as on the Internet, where it would reach an audience of thousands of people.

174.    As a result of Defendant WALSH's extrajudicial statements to the press, Plaintiff

was the subject of extensive and highly prejudicial news coverage.

175.    As a result of WALSH's extrajudicial statements to the press, Plaintiff's reputation was severely and permanently damaged.

176.    As a result of WALSH's extrajudicial statements to the press, Plaintiff lost career opportunities.

177.    As a result of WALSH's extrajudicial statements to the press, Plaintiff was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, was forced to incur substantial legal expenses, had his personal and professional reputation destroyed, and lost his economic opportunities.

178.    All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

> A.    Not to be deprived of liberty or property without due process of law;
>
> B.    To be free from seizure not based upon probable cause;
>
> C.    To be free from unwanted and malicious criminal prosecution;
>
> D.    Not to have cruel and unusual punishment imposed upon him; and
>
> E.    To receive equal protection under the law.

**SEVENTH CLAIM FOR RELIEF**
**DEFAMATION UNDER NEW YORK STATE LAW**

179.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs above as if the same were more fully set forth at length herein.

180.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh, issued a false statement published to a third party without privilege or authorization and/or made extrajudicial statements to the press regarding Plaintiff's

extrajudicial statements were not made for the purpose of carrying out his official duties, responsibilities, or functions as District Attorney of Rockland County.

181.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh, made such extrajudicial statements in order to create a "high- profile" case that would advance his own career goals.

182.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh, knew that his extrajudicial statements about Plaintiff were false and misleading.

183.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh, acted with malice in making false and misleading statements about Plaintiff.

184.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh, acted with  reckless disregard for the truth in making false and misleading statements about Plaintiff.

185.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh, made such statements without privilege or authorization from Plaintiff.

186.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh, knew that his extrajudicial statements about Plaintiff would be reported by various media outlets, including newspapers, radio stations and television networks, as well as on the Internet, where it would reach an audience of thousands of people

187.    Defendants and one or more of the Individual Defendants - including Defendants Walker and Walsh - issued a false statement with fault amounting to at least negligence.

188.    Defendants and one or more of the Individual Defendants - including Defendants Walker and Walsh - issued a false statement that caused special harm or defamation per se.

189.    At all relevant times, Defendants and one more of the Individual Defendants - including Defendants Walker and Walsh - acted within the scope of employment.

190.    Defendant Rockland is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiff during the course, and within the scope, of employment by Defendant Rockland under the doctrine of *respondeat superior.*

191.    As a result of Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh's extrajudicial statements to the press, Plaintiff was the subject of extensive and highly prejudicial news coverage.

192.    Defendants and one or more of the Individual Defendants, including Defendants Walker and Walsh's extrajudicial statements to the press, Plaintiff reputation was severely and permanently damaged, and his career opportunities were diminished.

193.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

## NINTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

194.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs above as if the same were more fully set forth at length herein.

195.    The acts complained of were carried out by the aforementioned Defendants, including the Individual Defendants, in their capacities as police officers, investigators, and officials, with all the actual and/or apparent authority attendant thereto.

196.    The acts complained of were carried out by the aforementioned Defendants, including the Individual Defendants, in their capacities as police officers, investigators, and

officials pursuant to the customs, policies, usages, practices, procedures, and rules of Rockland County and the District Attorney's Office, all under the supervision of ranking officers of said department.

197.    The foregoing customs, policies, usages, practices, procedures and rules of Rockland County and the District Attorney's Office constituted a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff RAYMOND CANARIO.

198.    The foregoing customs, policies, usages, practices, procedures and rules of Rockland County and the District Attorney's Office were the direct and proximate cause of the constitutional violations suffered by RAYMOND CANARIO as alleged herein.

199.    The foregoing customs, policies, usages, practices, procedures and rules of Rockland County and the District Attorney's Office were the moving force behind the constitutional violations suffered by Plaintiff, Raymond Canario, as alleged herein.

200.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of Rockland County and the District Attorney's Office, Plaintiff, Raymond Canario, was subjected to unlawful sexual assault resulting in permanent and disabling injuries.

201.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff, Raymond Canario.

202.    Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff, Raymond Canario's, constitutional rights.

203.    All of the foregoing acts by Defendants deprived Plaintiff, Raymond Canario, of legally and federally protected rights, including, but not limited to, the right:

    a.   Not to have excessive force imposed upon him;

    b.   Not to be sexually assaulted by a police officer;

    c.   Not to have summary punishment imposed upon him; and

    d.   Not to be falsely arrested and prosecuted;

    e.   Not to have evidence planted on him;

    f.   To receive equal protection under the law.

204.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

**TENTH CLAIM FOR RELIEF MONELL CLAIM PURSUANT TO 42 U.S.C. § 1983 AS AGAINST DEFENDANT ROCKLAND COUNTY**

205.    Plaintiff repeats and realleges each and every allegation contained in the aforementioned Paragraphs, as though fully set forth herein.

206.    Defendants, especially the elected officials, routinely conduct political witch hunts to please their constituents.

207.    Defendants, especially the elected officials, routinely conduct political witch hunts and make arrests – or cause the police to make arrests based on fabricated evidence – without probable cause.

208.    Defendant Rockland County and Defendant Walsh hired Defendant Wohl, even though Defendant Wohl had previously been found not credible by a judge because Defendant Rockland County and Defendant Walsh were not concerned about the credibility of its investigators but rather pre-ordained outcomes of its investigations.

209.    The foregoing policies are so commonly approved by Defendants that they are

de facto policy and have the force of law.

210.    Defendants Rockland County and Walsh have shown malice or a deliberate indifference towards citizens with respect to the foregoing unconstitutional policies.

211.    Plaintiff sustained injuries as a result of Defendant Rockland County and Defendant Walsh's unconstitutional policies.

212.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

## ELEVENTH CLAIM FOR RELIEF - MALICIOUS PROSECUTION PURSUANT TO NEW YORK STATE LAW AS AGAINST DEFENDANTS

213.    Plaintiffs repeat and reallege each and every allegation contained in the aforementioned Paragraphs, as though fully set forth herein.

214.    The Defendants and the Individual Defendants instituted criminal proceedings against Plaintiff.

215.    The Defendants and the Individual Defendants lacked probable cause for the criminal proceedings.

216.    The Defendants and the Individual Defendants acted with actual malice by bringing the criminal proceedings with intent to harm Plaintiff.

217.    The criminal proceedings terminated with a decision in Plaintiff's favor by way of being acquitted or dismissal of all charges.

218.    At all relevant times, the Defendants and the Individual Defendants acted under color of state law and within the scope of employment.

219.    Defendant Rockland is liable for the acts of its agents/employees, including the

Individual Defendants, taken against Plaintiff during the course, and within the scope, of employment by Defendant Rockland under the doctrine of *respondeat superior.*

220.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

**TWELTH CLAIM FOR RELIEF FALSE ARREST PURSUANT TO
NEW YORK STATE LAW AS AGAINST DEFENDANTS**

221.    Plaintiff repeats and realleges each and every allegation contained in the aforementioned Paragraphs, as though fully set forth herein.

222.    Defendants arrested Plaintiff and intended to confine him.

223.    Defendants did not have probable cause or other privilege for arresting Plaintiff.

224.    Plaintiff was aware of, and did not consent to, the resulting confinement.

225.    At all times, the Defendants and the Individual Defendants acted under color of state law and within the scope of employment.

226.    Defendant Rockland is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiff during the course, and within the scope, of employment by Defendant Rockland under the doctrine of *respondeat superior.*

227.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment.

## THIRTEENTH CLAIM FOR RELIEF NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION AS AGAINST <u>DEFENDANT ROCKLAND COUNTY</u>

228.    Plaintiff repeats and realleges each and every allegation contained in the aforementioned Paragraphs, as though fully set forth herein.

229.    Defendant Rockland County has a duty to only hire competent and qualified people to work at the district attorney's office.

230.    Defendant Rockland County has a duty to not hire prospective candidates, such as Defendant Wohl, who have questionable credibility or have been found incredible by a judge.

231.    Defendant Rockland County has a duty to train its district attorney's office with respect to refraining from conducting witch hunts for political gain.

232.    Defendant Rockland County as a duty to train its district attorney's office with respect to refraining from engaging in lies and deceit to gain probable cause.

233.    Defendant Rockland County has a duty to supervise its district attorney's office with respect to refraining from conducting witch hunts for political gain.

234.    Defendant Rockland County has a duty to supervise its district attorney's office with respect to refraining from engaging in lies and deceit to gain probable cause.

235.    Defendant Rockland County has a duty to terminate members of its district attorney's office who conduct witch hunts for political gain.

236.    Defendant Rockland County has a duty to terminate members of its district attorney's office who engage in lies and deceit to gain probable cause.

237.    Defendant Rockland County breached its aforementioned duties.

238.    Plaintiff sustained injuries as a result of the breaches of the aforementioned

duties by Defendant Rockland (through the actions of the Individual Defendants).

239.    As a result of the foregoing, Plaintiff sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights, was forced to incur substantial legal fees, had his personal and professional reputation destroyed, and lost opportunities for employment

## **PRAYER FOR RELIEF**

**WHEREFORE**, , it is respectfully requested that the Court award Plaintiff, RAYMOND CANARIO, compensatory damages in the sum of twenty-five million dollars ($25,000,000.00), punitive damages in the amount of fifty million dollars ($50,000,000.00), attorney's fees, costs, interest, and disbursements of this action, and such other relief as this Court may deem proper.

Dated:  May 11, 2024
         New York, New York

            BY:    /S/ JOEL M. RUBENSTEIN
                   JOEL M. RUBENSTEIN, ESQ.
                   German Rubenstein, LLP
                   Attorneys for Plaintiff
                   19 West 44th Street
                   Suite 1500
                   New York, NY 10036
                   (212) 704-2020