UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAYMOND CANARIO,

                                    *Plaintiff*,

        v.

THE COUNTY OF ROCKLAND, THE
ROCKLAND COUNTY DISTRICT
ATTORNEY'S OFFICE, HON. THOMAS E.
WALSH, II, *individually and in his official
capacity as District Attorney*, PATRICK
FRAWLEY, *individually and in his official
capacity as Chief Assistant District Attorney*,
RYAN SWEENEY, *individually and in her
official capacity as Assistant District Attorney*,
MICHAEL DUGANZSIC, *individually and in
his official capacity as Senior Assistant
District Attorney*, PETER WALKER,
*individually and in his official capacity as
Chief Criminal Investigator*, MATTHEW
WOHL, *individually and in his official
capacity as Investigator*, THE TOWN OF
CLARKSTOWN, CLARKSTOWN POLICE
DEPARTMENT, *and* JOHN DOES, *(fictitious
names intended to be additional Parties not yet
known, the identity and number of whom is
presently unknown to Claimant) in their
official capacities*,

                                    *Defendants*.

No. 24-CV-4470 (KMK)

<u>ORDER & OPINION</u>

---

<u>Appearances</u>:

Steven Jay German, Esq.
Joel Murray Rubenstein, Esq.
German Rubenstein, LLP
New York, NY
*Counsel for Plaintiff*

Gaetana Liantonio-McBride, Esq.
Lorin Ann Donnelly, Esq.
Milber Makris Plousadis & Seiden, LLP
Woodbury, NY
*Counsel for Defendant the County of Rockland*

Robert Benjamin Weissman, Esq.
Saretsky Katz Dranoff Weissman & Maynard, LLP
Elmsford, NY
*Counsel for Defendants Thomas E. Walsh, II, Patrick Frawley, Michael Duganzsic, and Matthew Wohl in their individual and official capacities*

Michael Kennedy Burke, Esq.
Hodges Walsh & Burke LLP
White Plains, NY
*Counsel for Defendants the Town of Clarkstown and Clarkstown Police Department*

KENNETH M. KARAS, United States District Judge:

Raymond Canario ("Plaintiff") brings this Action against the County of Rockland ("Rockland"), the Rockland County District Attorney's Office ("DA's Office"), Thomas E. Walsh, II ("Walsh"), Patrick Frawley ("Frawley"), Ryan Sweeney ("Sweeney"), Michael Duganzic ("Duganzic"), Peter Walker ("Walker"), the Town of Clarkston, the Clarkstown Police Department, and an unspecified number of John Does, alleging, inter alia, deprivation of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, false arrest, malicious prosecution, malicious abuse of process, and denial of a fair trial pursuant to 42 U.S.C. § 1983 ("Section 1983"), defamation under New York law, and negligent hiring, training, supervision, and retention. (*See generally* Compl. (Dkt. No. 4).) Before the Court are Motions to Dismiss ("Motions") by Rockland, (*see* Not. of Mot. (Dkt. No. 59)), Clarkstown (*see* Not. of Mot. (Dkt. No. 61)), and Walsh, Frawley, Duganzic, and Wohl (collectively, "Individual Defendants") (*see* Not. of Mot. (Dkt. No. 64)). For the reasons discussed below, the Motions are granted.

# I.  Background

## A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc.* 504, 992 F.2d 12, 15 (2d Cir. 1993))).

Rockland and Individual Defendants ask the Court to take judicial notice of materials appended to their briefs.  (*See generally* Rockland Mem. in Supp. ("Rockland Mem.") (Dkt. No. 63); *see also* Indiv. Defs' Mem. in Supp. ("Indiv. Defs' Mem.") (Dkt. No. 65) 2 n.2, 3 n.4, 5 n.6.)

The Court will take judicial notice of:

- documents related to Plaintiff's state court proceedings, including decisions, (Decl. of Lorin A. Donnelly ("Donnelly Decl."), Ex. E ("Am. Decision") (Dkt. No. 62-5)), and trial transcripts, (*id.*, Ex. N ("March 14 Trial Tr.") (Dkt. No. 62-14); *id.*, Ex. O ("March 17 Trial Tr.") (Dkt. No. 62-15));[1]

- documents related to the prosecution of Plaintiff, including felony complaints, (Donnelly Decl., Ex. B ("Felony Compls.") (Dkt. No. 62-2)), the grand jury indictment (*id.*, Ex. C ("Grand Jury Indictment") (Dkt. No. 62-3)), and an arrest report, (Decl. of Robert B. Weissman ("Weissman Decl."), Ex. I ("Arrest Rpt.") (Dkt. No. 66-9));[2]

- 2017, 2018, 2019, and 2020 annual reports filed by the Village of Spring Valley with the New York Department of State pursuant to 19 N.Y.C.R.R. § 1203, (Donnelly Decl., Ex. G ("First 2017 Rpt.") (Dkt. No. 62-7); *id.*, Ex. H ("Second 2017 Rpt.") (Dkt. No. 62-8); *id.*, Ex. I ("Third 2017 Rpt.") (Dkt. No. 62-9); *id.*, Ex. J ("First 2018 Rpt.") (Dkt. No. 62-10); *id.*, Ex. K ("Second 2018 Rpt.") (Dkt. No. 62-11); *id.*, Ex. L ("2019 Rpt.") (Dkt. No. 62-12); *id.*, Ex. M ("2020 Rpt.") (Dkt. No. 62-13));[3] and

---

[1] *See Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021) ("The [c]ourt may take judicial notice of a document filed before another court . . . ."); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *7 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice of filings in a court case submitted by a party); *Coggins v. Cnty. of Nassau*, No. 07-CV-3624, 2008 WL 2522501, at *7 (E.D.N.Y. June 20, 2008) (noting that "courts routinely take judicial notice[—]at the motion to dismiss stage[—]of transcripts of related judicial proceedings, including criminal proceedings").

[2] *See Phillips v. City of New York*, No. 21-CV-8149, 2024 WL 4307923, at *2 (S.D.N.Y. Sept. 26, 2024) (noting that "[j]udicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data'" (quoting *Wims v. New York City Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011))).

[3] *See Gov't Emps. Ins. Co. v. Active Med. Care, P.C.*, No. 24-CV-995, 2024 WL 4790169, at *1 n.1 (E.D.N.Y. Nov. 14, 2024) (taking "judicial notice of [New York] Department of State records"); *Haru Holding Corp. v. Haru Hana Sushi, Inc.*, No. 13-CV-7705, 2016 WL

- a grand jury exhibit upon which Plaintiff relies in drafting his Complaint, (Weissman Decl., Ex. M ("Grand Jury Ex. 7") (Dkt. No. 66-13)).[4]

The Court takes judicial notice of these materials for the fact of their existence and what they contain, not for the truth of the matters asserted. *See Broccoli v. Ashworth*, No. 21-CV-6931, 2025 WL 880550, at *3 (S.D.N.Y. Mar. 21, 2025) (taking judicial notice "for the fact that they exist, not the truth of the matters asserted therein" (citation omitted)); *Hutchins*, 2018 WL 4757970, at *7 (noting the court takes judicial notice "only to establish the fact of such filings and what they contained, not for the truth of the matter asserted therein" (citation omitted)).

B.  Factual Background

The following facts are drawn from Plaintiff's Complaint and from materials of which the Court may take judicial notice and are taken as true for the purposes of resolving the instant Motions. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

In April 2019, Plaintiff was hired as Assistant Building Inspector by the mayor of Spring Valley, New York.  (Compl. ¶ 29.)  19 N.Y.C.R.R. § 1203 requires that municipalities like Spring Valley "annually submit to the [New York] Secretary of State . . . a report of its activities relative to administration and enforcement of the [New York State Uniform Fire Prevention and Building Code and the New York State Energy Conservation Construction Code]."  19

_____

1070849, at *2 (S.D.N.Y. Mar. 15, 2016) (taking judicial notice of information provided by the New York State Department of State).

[4] *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (noting that judicial notice "may be taken of documents that are 'integral to the complaint' such that the complaint 'relies heavily upon [the documents'] terms and effect" (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019))).

N.Y.C.R.R. § 1203(1)(b)(6), (7), (16); *id.* § 1203(4).  These reports are also called "1203 Reports."  (Compl. ¶ 34.)  Plaintiff was assigned to file 1203 Reports.  (*Id.* ¶ 39.)  Plaintiff, who had no prior experience as a building inspector, was supposed to report to the Building Inspector, a position that was vacant.  (*Id.* ¶¶ 32, 40.)  Plaintiff had difficulty completing the 1203 Reports, (*see id.* ¶¶ 42–43, 45), and based his reporting "upon charts noting inspection status provided by the staff [and] not from personal visits and investigations," which Plaintiff "believe[ed] . . . accurately reflected . . . [building] inspections," (*id.* ¶ 44).  Plaintiff characterized the information contained in the 1203 Reports that he submitted as "an estimate."  (Grand Jury Ex. 7 at 15; *see also* Compl. ¶¶ 47–48.)  The chart below lists the multiple 1203 Reports, the name of the person submitting the report, and the date of submission.

| Report Year | Submitter | Date of Submission |
|---|---|---|
| First 2017 Report | Manuel Carmona | March 14, 2019 |
| Second 2017 Report | Manuel Carmona | June 10, 2019 |
| Third 2017 Report | Plaintiff | July 2, 2019 |
| First 2018 Report | Plaintiff | July 6, 2019 |
| Second 2018 Report[5] | Plaintiff | July 26, 2019 |
| 2019 Report | Wayne Ballard | March 31, 2020 |
| 2020 Report | Wayne Ballard | July 5, 2021 |

(*See* Dkt. Nos. 62-7 to -13.)

The 1203 Reports list information including, for example, the number of building permits issued by building type, the number of buildings by type and how many of each were inspected in the last year, and the number of new constructions complete and percentage thereof that are at least 90% compliant.  (Compl. ¶ 36; *see, e.g.*, First 2018 Rpt.)

On March 23, 2021, a fire ignited at the Evergreen Court Home for Adults, killing a firefighter and a resident.  (Compl. ¶¶ 52, 54.)  The Spring Valley Police Department

---

[5] The 2018 Reports appear identical.

investigated the fire and concluded its investigation without making any arrests.  (*Id.* ¶ 55.)
Plaintiff alleges that, after the police department's investigation concluded, the DA's Office
"took up the criminal investigation," at least partly because "[t]he local media was pressuring
[District Attorney] Walsh to punish someone for the deadly fire."  (*Id.* ¶¶ 57–58.)  Plaintiff also
alleges, "[u]pon information and belief," that "Defendants sought to have a detective with [the
Spring Valley Police Department] . . . sign [a false] arrest/accusatory instrument," which the
detective refused to do.  (*Id.* ¶ 60.)

On April 1, 2021, Walsh announced, "We have assembled today the investigative leaders
from federal[,] state[,] and local law enforcement agencies pursuing this inquiry into the cause of
the Evergreen Fire."  (*Id.* ¶ 73.)

On June 28, 2021, Chief Criminal Investigator Walker signed a felony complaint that
charged Plaintiff with three counts of offering a false instrument for filing in the first degree and
three counts of falsifying business records in the second degree.  (*See* Felony Compls.)  On June
29, 2021, Plaintiff was arrested and given a desk appearance ticket.  (Compl. ¶ 61; Arrest Rpt. 2.)
Wayne Ballard, another building inspector, was also arrested.  (*See* Compl. ¶ 62.)  A June 29,
2021 Fox 5 article quoted Walsh as saying that "th[e] investigation is not over and will continue
into the events that led to this tragic catastrophe and underlying governmental malfeasance."
(*Id.*)  A June 30, 2021 Lohud article about Plaintiff's arrest quoted Walsh as saying, "Today is
the culmination of a multi-agency investigation that left no stone unturned."  (*Id.* ¶ 78.)  Wohl, a
former New York Police Department officer, was an investigator for Rockland and "worked on
the team that investigated Plaintiff."  (*Id.* ¶ 83.)  "Upon information and belief," Wohl "made
false statements under oath" prior "to being hired by [the DA's Office]."  (*Id.* ¶ 84.)  Plaintiff

cites a website, "50-a.org," as indicating that Wohl has "potential credibility problems and adverse credibility ruling[s] by judges." (*Id.* ¶ 88.)

On July 5, 2021, a grand jury returned a nine-count indictment, including Counts 1, 2, and 3, offering a false instrument for filing in the first degree,[6] Counts 4, 5, and 6, offering a false instrument for filing in the second degree,[7] and Counts 7, 8, and 9, falsifying business records in the second degree.[8] (*See* Grand Jury Indictment.) Plaintiff alleges that Defendants "presented false evidence to the Grand Jury . . . and withheld relevant evidence with respect to testifying witnesses." (Compl. ¶ 66.)

At an unspecified date, the case against Plaintiff was assigned to Judge Kevin Russo of the Rockland County Court. (*See* Am. Decision.) In April 2022, Plaintiff moved to dismiss the indictment. (*See* Suppl. Decl. of Robert B. Weissman, Ex. A (Dkt. No. 78-1).) In May 2022, Judge Russo ruled that the "evidence presented . . . was legally sufficient to support the charges within the indictment" as to the first six counts. (Am. Decision 1.) Judge Russo noted that

---

[6] A person is guilty of offering a false instrument for filing in the first degree when: "knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation." N.Y. Penal Law § 175.35(1).

[7] A person is guilty of offering a false instrument for filing in the second degree when: "knowing that a written instrument contains a false statement or false information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant." N.Y. Penal Law § 175.30.

[8] A person is guilty of falsifying business records in the second degree when: "with intent to defraud, he . . . [m]akes or causes a false entry in the business records of an enterprise." N.Y. Penal Law § 175.05(1).

Plaintiff's arguments as to the sufficiency of the evidence were "strong and convincing arguments demonstrating possible deficiencies in the [prosecution's] case." (*Id.* 2.) Judge Russo dismissed the seventh, eighth, and ninth counts of the indictment because the 1203 Reports were records of the New York Secretary of State and Plaintiff had no degree of control over those reports as records of the Department of State. (*Id.* 3.)

Plaintiff alleges "[u]pon information and belief, [that] Defendants did not produce a single document from the Spring Valley Police Department to defense counsel." (Compl. ¶ 90.) A bench trial was held before Judge Russo in March 2023. (*See* March 14 Trial Tr.; March 17 Trial Tr.) The exact duration of the trial is unclear. On March 14, 2023, Judge Russo dismissed Counts 1, 2, 3, 7, 8, and 9 for lack of evidence going to Plaintiff's intent to defraud. (March 14 Trial Tr. at 467:13–25.) On March 17, 2023, Plaintiff was found not guilty on Counts 4, 5, and 6. (*See* March 17 Trial Tr. at 565:20–24.) The same day, Walker released a statement: "The yearslong disorganization and disfunction of the Spring Valley Building Department served as a defense in these cases. The court chose not to hold these defendants accountable for their role in the malfeasance in the building department. We disagree with the [c]ourt's decision and are disappointed in it." (Compl. ¶ 3.)

On June 9, 2023, Plaintiff served a notice of claim on Defendants. (*Id.* ¶ 9.)

C.  Procedural Background

Plaintiff initiated this Action on June 12, 2024. (Compl.) On August 12, 2024, the Court set a briefing schedule for the Motions. (Dkt. No. 51.) After extensions, Defendants filed their Motions on October 22, 2024. (Rockland Mem.; Indiv. Defs' Mem.; Clarkstown Mem. in Supp. ("Clarkstown Mem.") (Dkt. No. 61).) On January 6, 2025, Plaintiff filed his Opposition. (Pl's Mem. in Opp. ("Pl's Opp.") (Dkt. No. 73).) On January 15, 2025, Plaintiff filed a supplemental

opposition.  (Pl's Supp. Mem. in Opp. ("Pl's Supp. Opp.") (Dkt. No. 74).)  On February 5, 2025,

Individual Defendants filed their Reply, (Indiv. Defs' Reply in Supp. ("Indiv. Defs' Reply")

(Dkt. No. 79)), and Clarkstown filed a letter in reply, (("Clarkstown Ltr. Reply") (Dkt. No. 81)).

On February 6, 2025, Rockland filed its Reply.  (Rockland Reply in Supp. ("Rockland Reply")

(Dkt. No. 82).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

10

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"

(alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v.*

*Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

 Plaintiff has thirteen claims.  As to all Defendants, Plaintiff asserts a claim for

"deprivation of federal rights" pursuant to the First, Fourth, Fifth, Eighth, and Fourteenth

Amendments, (Compl. ¶¶ 95–100); false arrest under 42 U.S.C. § 1983 ("Section 1983") and

state law, (*id.* ¶¶ 101–06, 221–27); malicious prosecution under Section 1983 and state law, (*id.*

¶¶ 107–27, 213–20); malicious abuse of process, (*id.* ¶¶ 142–47); denial of fair trial, (*id.* ¶¶ 160–67); and defamation, (*id.* ¶¶179–93). As to Walsh, Plaintiff alleges that his "extrajudicial statements" give rise to a claim of denial of fair trial, (*id.* ¶¶ 148–59), and a "stigma[-]plus" claim, (*id.* ¶¶ 168–78). As to Rockland, Plaintiff asserts claims for *Monell* liability, (*id.* ¶¶ 205–12), and negligent hiring, training, supervision, and retention, (*id.* ¶¶ 228–39). Plaintiff also asserts a claim for municipal liability. (*Id.* ¶¶ 194–204.)[9]  The Court addresses first preliminary issues about sufficiency of the pleading, then Plaintiff's claims in turn.

### 1. Sufficiency of the Complaint

Individual Defendants argue that the Complaint "lacks any well-pleaded facts concerning what Frawley, Duganzic, or Sweeney actually did in connection with Plaintiff's claims." (Indiv. Defs' Mem. 18.) Clarkstown makes a similar argument.[10]  (*See* Clarkstown Mem. 2–3; Clarkstown Reply 5.) Plaintiff fails to address these points in his Opposition. (*See generally* Pl's Opp.)

The Complaint mentions Frawley, Duganzic, and Sweeney each only twice: first, as individuals who were served a notice of claim, (*see* Compl. ¶ 9), and second, as parties to the Action, (*see id.* ¶¶ 17–19). As for Clarkstown, the Complaint notes only that it "is a municipal corporation of the State of New York and is a resident of the Southern District of New York."

---

[9] The Complaint omits paragraphs 128 to 141.

[10] Clarkstown also argues that the Clarkstown Police Department is an administrative arm of Clarkstown and therefore cannot be sued. (Clarkstown Mem. 2.) Clarkstown is correct that, "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Sagaria v. Orange Cnty. Jail*, No. 20-CV-2287, 2021 WL 4392422, at *3 (S.D.N.Y. Sept. 24, 2021) (collecting cases). Accordingly, Plaintiff's claims against the Clarkstown Police Department are dismissed with prejudice.

(*Id.* ¶ 22.)  There is no other mention of or allegation concerning Clarkstown in the Complaint.

Accordingly, all claims against Frawley, Duganzic, Sweeney, and Clarkstown are dismissed.

*See Harris v. Leon*, No. 20-CV-10864, 2023 WL 2051171, at *5 (S.D.N.Y. Feb. 16, 2023) ("By

lumping all the defendants together in each claim and providing no factual basis to distinguish

their conduct, [the] complaint failed to satisfy th[e] minimum standard [under Fed. R. Civ. P.

8]." (omitting internal quotation)); *Brock v. City of New York*, No. 19-CV-597, 2019 WL

438356, at *2 (E.D.N.Y. Feb. 4, 2019) (dismissing municipality where the complaint contained

"no allegations against the municipality"); *Jackson v. City of Rochester*, No. 17-CV-6448, 2018

WL 11317393, at *3 (W.D.N.Y. May 14, 2018) (same).

    The Court now turns to whether Plaintiff has plausibly alleged claims against the

remaining Defendants:  Rockland, the DA's Office, Walsh, Walker, and Wohl.

    <u>2.  Deprivation of Federal Rights (First Claim)</u>

    Plaintiff alleges that his rights under the First, Fourth, Fifth, Eighth, and Fourteenth

Amendments were violated.  (Compl. ¶¶ 95–100.)  Specifically, Plaintiff alleges that Defendants

"imposed" excessive force and summary punishment "upon him," and that he was deprived of

equal protection under the law, falsely arrested, and maliciously prosecuted.  (*Id.* ¶¶ 99(a)–(d).)

Rockland argues that this claim "does not set forth a plausible cause of action" and is, instead, a

"catchall" claim.  (Rockland Mem. 21.)  Plaintiff does not address this argument in his

Opposition.  (*See generally* Pl's Opp.)

    Plaintiff's failure to respond to Rockland's arguments, or to make any argument at all

with respect to this claim constitutes abandonment.  *See Martinez v. Town of Clarkstown*, No.

23-CV-5364, 2024 WL 4124717, at *4 (S.D.N.Y. Sept. 9, 2024) (deeming a claim abandoned

where plaintiff failed to respond to arguments in her opposition).  To the extent that this claim

asserts false arrest and malicious prosecution claims under the Fourth Amendment, a denial of

the right to a fair trial under the Fifth and Sixth Amendments, or a stigma-plus due process claim

under the Fifth and Fourteenth Amendments, these are all duplicative of other claims which are

discussed below.

    3.  False Arrest (Second and Twelfth Claims)

    "A Section 1983 claim for false arrest 'rest[s] on the Fourth Amendment right of an

individual to be free from unreasonable seizures, including arrest without probable cause.'"

*Dejesus v. City of Yonkers*, No. 22-CV-2817, 2025 WL 81386, at \*5 (S.D.N.Y. Jan. 13, 2025)

(quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  A Section 1983 false arrest claim is

substantially the same as a claim of false arrest under New York law.  *See Weyant*, 101 F.3d at

852; *see also Higginbotham v. Sylvester*, 741 F. App'x 28, 30 (2d Cir. 2018) (summary order)

(same); *Delgado v. City of New York*, No. 19-CV-632, 2023 WL 6390134, at \*8 (S.D.N.Y. Oct.

2, 2023) ("A [Section] 1983 claim for false arrest, resting on the Fourth Amendment right of an

individual to be free from unreasonable seizures, including arrest without probable cause, is

substantially the same as a claim for false arrest under New York law.").  New York law requires

a plaintiff to show "that (1) the defendant intended to confine him, (2) the plaintiff was conscious

of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the

confinement was not otherwise privileged."  *Toussaint v. Cnty. of Westchester*, No. 21-CV-3817,

2022 WL 2834108, at \*5 (S.D.N.Y. July 20, 2022) (citation omitted).  "[T]he existence of

probable cause to arrest constitutes justification and is a complete defense to an action for false

arrest . . . under [Section] 1983."  *Dillon v. Rosen*, No. 22-CV-7035, 2022 WL 4538397, at \*3

(S.D.N.Y. Sept. 28, 2022) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007)); *see

also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to

arrest . . . will defeat a claim of false arrest under the Fourth Amendment."); *Jaegly v. Couch*, 439 F.3d 149, 150 (2d Cir. 2006) ("[A] claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime.").

Generally speaking, an officer has probable cause to arrest when he or she, "on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Hawkins*, 37 F.4th 854, 858 (2d Cir. 2022) (per curiam); *see also Collier v. City of Mount Vernon*, No. 19-CV-523, 2024 WL 4043135, at *8 (S.D.N.Y. Sept. 4, 2024) (noting that an officer has probable cause to arrest where they have "reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested"). As the Second Circuit has observed:

> To determine the existence of probable cause, a court considers the totality of the circumstances, based on "a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." The court considers those facts available to the officer at the time of the arrest and immediately before it. The significance of each of these factors may be enhanced or diminished by surrounding circumstances.

*Dejesus*, 2025 WL 81386, at *5 (quoting *Guan v. City of N.Y.*, 37 F.4th 797, 804 (2d Cir. 2022)).

There is no dispute that Plaintiff has adequately plead the first three elements of a false arrest claim, but the Parties dispute whether the arrest was otherwise privileged. Specifically, Defendants argue that there was probable cause to arrest Plaintiff. (*See* Rockland Mem. 13–16; Indiv. Defs' Mem. 6–14.) The "existence of probable cause gives an officer the privilege to arrest." *Ost v. Allegany County*, No. 17-CV-847, 2019 WL 1517560, at *3 (W.D.N.Y. Apr. 8, 2019) (quoting *Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996)). Insofar as Rockland and Individual Defendants argue that the grand jury indictment creates a presumption of probable

cause that defeats Plaintiff's false arrest claim, they are wrong. "The presumption arising from a grand jury indictment only applies to a malicious prosecution claim and not to a claim of false arrest." *Reeder v. Vine*, No. 20-CV-6026, 2023 WL 2044126, at *6 (W.D.N.Y. Feb. 16, 2023). Even if that was not the case, Defendants conveniently ignore the fact that Plaintiff's arrest took place approximately one week before the grand jury indictment issued. (*Compare* Arrest Rpt. (June 29, 2021), *with* Grand Jury Indictment (July 5, 2021).) *See Graham v. Ferretti*, No. 14-CV-5815, 2022 WL 20472223, at *11 (E.D.N.Y. Aug. 5, 2022) ("[T]he probable cause analysis is not retroactive."). Plaintiff argues that "the presumption of probable cause [is] rebutted based on the suppression of evidence, fraud, bad faith, and a lack of mens rea." (Pl's Opp. 14 (italics omitted).) The Court considers whether there was probable cause to arrest Plaintiff for offering a false instrument for filing in the first degree.

> A person is guilty of offering a false instrument for filing in the first degree when:
>
> knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation.

N.Y. Penal Law § 175.35(1). Walker signed felony complaints on June 28, 2021, and Plaintiff was arrested the following day on the complaints. (*See* Felony Compls.; Arrest Rpt. 2.) Rockland asserts that "the significant inconsistences in the 1203 [R]eports filed by Plaintiff established probable cause to believe that the reported data was false." (Rockland Mem. 16.) Similarly, Individual Defendants argue that "mathematical inaccuracies" and the "appearance[] and disappearance[] of hundreds of buildings" in the 1203 Reports support probable cause to believe that "the data reported was falsified." (Indiv. Defs' Mem. 9.) The felony complaints refer specifically to the 1203 Reports that Plaintiff filed for 2017 and 2018. (*See* Felony Compls.

(referring to Third 2017 Rpt., First 2018 Rpt., and Second 2018 Rpt.).)  Plaintiff does not dispute

that he was the individual who submitted the reports.  (*See* Compl. ¶¶ 39–44.)  That Plaintiff

alleges the figures in the reports were estimates, (*see id.* ¶¶ 38–48), does not change the probable

cause analysis.

The 1203 Reports for 2017 and 2018 contain discrepancies on which the arresting

officers and felony complaints could reasonably rely.  Plaintiff filed a 2017 report on July 2,

2019, even though Manuel Carmona had filed a 2017 report on June 10, 2019.  (*See* Second 2017

Rpt.; Third 2017 Rpt.)  There are numerous discrepancies between these two reports:  Carmona

reported 87 areas of public assembly, of which 30 were inspected, 270 multiple dwellings, and

743 commercial or industrial occupancies, of which 300 were inspected.  (Second 2017 Rpt. 5.)

Just one month later, Plaintiff reported 516 areas of public assembly, of which 487 were

inspected, 50 multiple dwellings, and 36 commercial or industrial occupancies, of which 535

were inspected.  (Third 2017 Rpt. 5.)  Discrepancies also exist between Plaintiff's 2017 and 2018

reports.  For example, the 2017 report states that that there were 50 multiple dwellings

containing 3 or more dwelling units, of which 40 were inspected, and which contained a total of

50 dwelling units.  (Third 2017 Rpt. 5.)  In contrast, the 2018 report states that there are 5 such

dwellings, which were all inspected, and which contained a total of 150 dwelling units.  (First

2018 Rpt. 6.)  Similarly, the number of commercial or industrial occupancies went from 36 to 0.

(*Compare* Third 2017 Rpt. 5 *with* First 2018 Rpt. 6.)  Even drawing inferences in Plaintiff's

favor, the totality of the circumstances supports the existence of probable cause to arrest Plaintiff

for offering a false instrument for filing in the first degree.  These discrepancies may reasonably

be seen as false statements or false information, and there is no dispute that the New York

Department of State is an entity covered by the statute.  *See Hughes v. McWilliams*, No. 04-CV-

7030, 2009 WL 4823940, at *7 (S.D.N.Y. Dec. 15, 2009) (finding probable cause to arrest plaintiff for filing a false instrument where the officer noted a "discrepancy between . . . two documents"), *aff'd*, 420 F. App'x 63 (2d Cir. 2011); *cf. Medina v. City of New York*, No. 20-CV-797, 2021 WL 1700323, at *3 (S.D.N.Y. Apr. 29, 2021) (finding probable cause to charge plaintiff with possession of a forged registration where plaintiff's "VIN on her registration did not match the VIN on her vehicle").

Plaintiff argues in passing that "the presumption of probable cause can be rebutted based on . . . a complete lack of mens rea." (Pl's Opp. 10 (italics omitted).) On the contrary, the arresting officers were not "under any obligation to inquire into what [Plaintiff's] state of mind might have been when he submitted the [reports]." *Kravtchouk v. City of New York*, No. 16-CV-4787, 2019 WL 4918083, at *7 (E.D.N.Y. Sept. 30, 2019) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)). "[I]n challenging the existence of probable cause, [Plaintiff] places great reliance on the features of [his] case that distinguish it from typical police investigations and charging decisions." *Middelem v. Cnty. of Suffolk*, No. 99-CV-2707, 2003 WL 145247, at *9 (E.D.N.Y. Jan. 9, 2003). However, "the subjective motivations of the officer are not relevant to the determination of probable cause." *Id.*; *see also Hagans v. Maher*, No. 18-CV-1917, 2022 WL 4538561, at *9 (E.D.N.Y. Sept. 28, 2022) (noting that this proposition is "well settled"). Plaintiff "has failed to proffer any cogent [or plausible] allegations or reasoning as to why it was unreasonable for the [arresting] officers to rely upon the [1203 Reports]." *Hagans*, 2022 WL 4538561, at *9. Accordingly, because there was probable cause to arrest, the Court dismisses Plaintiff's false arrest claims.[11]

---

[11] Because the Court finds that there was probable cause to arrest for offering a false instrument for filing in the first degree, it does and need not reach whether there was probable

18

4.  Malicious Prosecution (Counts Three and Eleven)

"While the tort of malicious prosecution protects against the consequences of wrongful prosecution, public policy favors bringing criminals to justice, and accusers must be allowed room for benign misjudgments.  The law therefore places a heavy burden on malicious prosecution plaintiffs."  *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000); *see also Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (noting the heavy burden plaintiffs must meet on a malicious prosecution claim under New York law).  Federal and state malicious prosecution claims have "overlapping standards."  *Kurtz v. Hansell*, 664 F. Supp. 3d 438, 452 (S.D.N.Y. 2023), *aff'd sub nom. Kakar Kurtz v. Lawson*, No. 23-7548, 2025 WL 39860 (2d Cir. Jan. 7, 2025).  "To state a [Section] 1983 malicious prosecution claim a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law."  *Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 238 (S.D.N.Y. 2022) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022)).

> Under New York law, a plaintiff asserting malicious prosecution must demonstrate: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions."

*Cruz v. Cnty. of Rockland*, No. 21-CV-2073, 2023 WL 6199189, at *6 (S.D.N.Y. Sept. 22, 2023) (quoting *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019)).  In addition to these four elements, a plaintiff must also show (5) "that there was [] a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Adam v. City of New York*, No.

---

cause to arrest for falsifying business records in the second degree, as "[a] showing of probable cause to arrest for any single crime defeats a claim for false arrest."  *Witt v. Armstrong*, No. 3:20-CV-1570, 2022 WL 3043546, at *4 (D. Conn. Aug. 2, 2022).

21-CV-3956, 2024 WL 3875772, at *6 (E.D.N.Y. Aug. 19, 2024) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

The Parties do not dispute the first two elements.  Rockland and Individual Defendants argue that there was probable cause for Plaintiff's prosecution and that Plaintiff has failed to plausibly allege malice or a deprivation of liberty.  (*See* Rockland Mem. 17–18; Indiv. Defs' Mem. 14–16.)  Plaintiff argues that he has sufficiently alleged that the presumption of probable cause may be rebutted, malice can be inferred, and that he has suffered a sufficient deprivation of liberty.  (*See* Pl's Opp. 11–13.)

"No claim for malicious prosecution can survive if there was probable cause for the prosecution." *Buari v. City of New York*, 530 F. Supp. 3d 356, 384 (S.D.N.Y. 2021) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)).  A grand jury indictment establishes a presumption of probable cause that "may be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Haughey v. County of Putnam*, No. 18-CV-2861, 2022 WL 4468066, at *11 (S.D.N.Y. Sept. 26, 2022) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013)). "[W]here a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than mere conjecture and surmise that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith, which is insufficient to rebut the presumption of probable cause." *Johnson v. McMorrow*, No. 19-CV-6480, 2023 WL 1797063, at *5 (S.D.N.Y. Feb. 7, 2023) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272–73 (S.D.N.Y. 2010)); *see also Merrill v. Copeland*, No. 19-CV-1240, 2022 WL 3212075, at *16 (N.D.N.Y. Aug. 9, 2022) (plaintiff's failure to explain how the proceedings before the grand jury were "tainted" insufficient to rebut

presumption of probable cause created by grand jury indictment); *Gutierrez v. New York*, No. 18-CV-3621, 2021 WL 681238, at *12 (E.D.N.Y. Feb. 22, 2021) ("Plaintiff has adduced no evidence from which a reasonable juror could conclude that Defendants procured his indictment through fraud, perjury, or other bad faith."); *Soto v. City of New York*, 132 F. Supp. 3d 424, 456 (E.D.N.Y. 2015) (presumption unrebutted where the "[p]laintiff merely surmises there was bad faith . . . [and] has neither sought nor produced the grand jury minutes in this matter precluding any further evaluation of what occurred before the grand jury"); *Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) (finding plaintiff's offer of his "suspicions of impropriety as proof of the defendants' misconduct before the grand jury" insufficient to rebut presumption).

Rockland and Individual Defendants argue that the grand jury indictment supplies the probable cause that is a complete defense to the claim of malicious prosecution. (*See* Rockland Mem. 17–18; Indiv. Defs' 16.) Plaintiff argues that this presumption "can be rebutted based on the suppression of evidence, fraud, [] bad faith[,] and a complete lack of mens rea." (Pl's Opp. 10 (italics omitted).) Plaintiff asserts that Defendants were "fully aware of the[] difficulties faced by [P]laintiff in filing the[] [1203] [R]eports," and that Defendants "withheld this information from the [g]rand [j]ury." (*Id.*) Plaintiff further argues that Defendants' alleged attempt to convince a detective to sign an accusatory instrument was similarly withheld from the grand jury. (*Id.* 11.) Finally, Plaintiff argues that "[D]efendants presented false evidence to the [g]rand [j]ury and withheld evidence that undermined the charges, including with respect to testifying witnesses." (*Id.*)

Plaintiff alleges that the Defendants "presented false evidence" to the grand jury, (Compl. ¶ 66), but fails to provide any further context or details. Plaintiff also alleges, again without providing any details, that Defendants withheld from the grand jury Plaintiff's "difficulties" in

filing the 1203 Reports, (*id.* ¶¶ 39–48), and that a law enforcement officer allegedly refused to sign an accusatory instrument, (*id.* ¶ 60). Plaintiff's allegations do not plausibly "show that any of the Defendants fabricated, falsified, or suppressed evidence, or otherwise acted in bad faith regarding Plaintiff's grand jury indictment." *Diallo v. New York City*, No. 23-CV-1238, 2025 WL 522514, at *8 (S.D.N.Y. Feb. 18, 2025), *appeal pending*, No. 25-633 (2d Cir. Mar. 19, 2025). "At most, these allegations show the weaknesses of the case against Plaintiff." *Id.*

With respect to what information was disclosed to the grand jury, these allegations are applicable to the prosecutors, who are "protected by absolute immunity." *Diallo*, 2025 WL 522514, at *9 (citing *Smhueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) ("Further, although absolute immunity is an affirmative defense whose availability depends on the nature of the function being performed by the defendant official who is alleged to have engaged in the challenged conduct . . . the nature of that function is often clear from the face of the complaint. In that circumstance, the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6)." (internal citations omitted)). The initiation and pursuit of a criminal prosecution are "quintessential prosecutorial functions protected by absolute immunity," *id.*, and, in any case, "[a] prosecutor is not required to present to the grand jury exculpatory evidence," *Jimenez v. City of New York*, No. 23-CV-6751, 2025 WL 935233, at *15 (S.D.N.Y. Mar. 27, 2025), *appeal pending*, No. 25-776 (2d Cir. Apr. 3, 2025). Accordingly, "[b]ecause Plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause, dismissal of Plaintiff's malicious prosecution claim[s] is warranted." *Diallo*, 2025 WL 522514, at *10; *see also Thorpe v. Delta Air Lines, Inc.*, No. 24-CV-1089, 2024 WL 5007423, at *8 (E.D.N.Y. Dec. 6, 2024) (finding plaintiff failed to overcome the presumption where his allegations amounted to "mere conjecture and surmise that his

indictment was procured as a result of conduct undertaken by [defendant] in bad faith"), *appeal pending*, No. 25-58 (2d Cir. Jan. 8, 2025); *cf. Johnson v. United States*, 759 F. Supp. 3d 425, 446, (S.D.N.Y. 2024) (finding plaintiffs overcame the presumption when alleging in detail how "the prosecution's case against [p]laintiffs rested in significant part on fabricated evidence"); *Bell v. City of New York*, No. 22-CV-3251, 2023 WL 11916696, at *8 (E.D.N.Y. Sept. 1, 2023) (finding plaintiff overcame the presumption where he "describe[d] in detail how [defendants] coerced his confession, that they knew his confession was false, and that they provided this falsified information to prosecutors for use in indicting and prosecuting [p]laintiff"); *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 105 (N.D.N.Y. 2023) (finding plaintiff overcame the presumption when alleging that defendants "knew evidence was not reliable, failed to observe typical guidelines for these types of investigations, and failed to conduct further investigation," but characterizing it as "a close call").[12]

    5.  Abuse of Process (Fourth Claim)

"In order to establish liability for malicious abuse of process under [Section] 1983, a plaintiff must establish the claim's elements under state law as well as the deprivation of a constitutional right." *Barkai v. Nuendorf*, No. 21-CV-4060, 2023 WL 2691712, at *35 (S.D.N.Y. Mar. 29, 2023) (quoting *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 446 (E.D.N.Y. Sep. 28, 2012), *aff'd*, 523 F. App'x 770 (2d Cir. 2013)).  Under New York law, a plaintiff may assert an abuse of process claim against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm

---

[12] Because the Court has found that Plaintiff has failed to rebut the presumption of probable cause, it does not reach whether Plaintiff has adequately pled the malice and deprivation of liberty elements of a malicious prosecution claim.

without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *Dominguez v. Walsh*, No. 22-CV-6443, 2025 WL 618868, at *10 (S.D.N.Y. Feb. 26, 2025) (noting the same elements).

A collateral objective is the "crux of a malicious abuse of process claim." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011). To plead a collateral objective, a plaintiff must plausibly plead not that defendant acted with an "improper motive," but rather an "improper purpose." *Savino*, 331 F.3d at 77; *see also Lopez-Motherway v. City of Long Beach*, No. 20-CV-5652, 2021 WL 965158, at *4 (E.D.N.Y. Mar. 15, 2021) (same). In other words, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, [the plaintiff] must claim that they aimed to achieve a collateral purpose *beyond or in addition to* his criminal prosecution." *Savino*, 331 F.3d at 77 (emphasis added); *see also Wetzel v. Town of Orangetown*, No. 06-CV-6117, 2010 WL 743039, at *5 (S.D.N.Y. Mar. 2, 2010) ("New York Courts have made clear that a malicious motive alone[] does not give rise to a cause of action for abuse of process.").

Individual Defendants argue that Plaintiff has failed to plausibly allege a collateral objective, that probable cause is a defense to a claim of abuse of process, and that Walsh, Walker, and Wohl are entitled to qualified immunity. (*See* Indiv. Defs' Mem. 20–21.) Rockland argues that Plaintiff has failed to establish *Monell* liability for Rockland and the DA's Office. (Rockland Mem. 10.) Plaintiff did not address abuse of process in his Opposition, (*see generally* Pl's Opp.), but does in his Supplemental Opposition, (*see* Pl's Supp. Opp.). There, Plaintiff argues that Defendants' collateral objective was "scapegoating him for the [Evergreen] fire."

(*Id.* 2.)  In so arguing, however, Plaintiff concedes that Defendants' alleged collateral objective was, in fact, his prosecution, and not some other purpose beyond or in addition to his prosecution.  This is fatal to Plaintiff's claim.  *See Savino*, 331 F.3d at 77–78 (in analyzing an abuse of process claim, holding that an allegation that defendants were "solely motivated to seek vindication for [their] great political embarrassment and humiliation" was an improper motive, not a purpose or objective); *Thorpe*, 2024 WL 5007423, at *9 (dismissing an abuse of process claim where the plaintiff alleged that defendants' collateral objective was scapegoating plaintiff); *LoPorto v. Cnty. of Rensselaer*, No. 15-CV-866, 2018 WL 4565768, at *14–15 (N.D.N.Y. Sept. 24, 2018) (dismissing an abuse of process claim where the plaintiff alleged that a defendant tried to "scapegoat" him and collecting cases); *cf. Crews v. Cnty. of Nassau*, No. 06-CV-2610, 2007 WL 4591325, *12 (E.D.N.Y. 2007) ("Because plaintiffs have merely alleged that defendants were motivated by their desire to cover up their misdeeds, but not that defendants had a purpose other than to prosecute [plaintiff], the abuse of process claim fails.").

### 6.  Denial of a Fair Trial (Fifth and Sixth Claim)

"To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating office[r] (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Savarese v. City of New York*, 547 F. Supp. 3d 305, 347 (S.D.N.Y. 2021) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016)); *see also Douglas v. City of Peekskill*, No. 21-CV-10644, 2025 WL 965018, at *11–12 (S.D.N.Y. Mar. 31, 2025) (describing the identical elements).  Further, "[b]ecause a lack of probable cause to arrest or prosecute is not a necessary element of a fabricated evidence claim, the existence of probable cause does not defeat such a claim."  *McKinley v. Crevatas*, No. 20-CV-3606, 2023 WL

4364182, at *12 (S.D.N.Y. July 6, 2023); *Garnett*, 838 F.3d at 278 ("[P]robable cause is no defense to a denial of the right to a fair trial claim . . . ."). "[I]n addition to the fabrication of evidence, 'police officers can be held liable for *Brady* due process violations under [Section] 1983 if they withhold exculpatory evidence from prosecutors.'" *Moroughan v. County of Suffolk*, 514 F. Supp. 3d 479, 535 (E.D.N.Y. 2021) (quoting *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015) (alterations omitted)); *see also Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019) ("When police officers withhold exculpatory or impeaching evidence from prosecutors, they may be held liable under [Section] 1983 for violating the disclosure requirements of *Brady v. Maryland*.").

Plaintiff alleges that he was denied a fair trial due to extrajudicial statements made by Walsh "to create a 'high-profile' case that would advance [h]is own career goals," (Compl. ¶¶ 148–59), and due to Defendants' failure to turn over any documents from the Spring Valley Police Department, (*id.* ¶¶ 160–67), *i.e.*, a *Brady* violation. Because "[c]ourts have categorically rejected denial of a right to fair trial claims based on *Brady* violations where the plaintiff was not convicted in the underlying criminal trial," *McClean v. Cnty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *16 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019); *see also Hester v. Albany Cnty. Dist. Att'y*, No. 20-CV-1153, 2021 WL 1968201, at *9 (N.D.N.Y. Apr. 22, 2021) (same and collecting cases), *report and recommendation adopted*, 2021 WL 1966743 (N.D.N.Y. May 17, 2021); *Ventillo v. Falco*, No. 19-CV-3664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (same), the Court does not address the Parties' arguments on this issue. Accordingly, the Court need only address whether Plaintiff has plausibly alleged whether Walsh's extrajudicial statements denied him a fair trial.

> To prevail upon a claim for denial of a fair trial due to prejudicial publicity [or
> extrajudicial statements], a plaintiff must establish three elements: (1) that there
> were "improper leaks" under the canons of ethics; (2) that the plaintiff had in fact
> been denied his due process rights; and (3) that other remedies, such as voir dire,
> peremptory challenges, and challenges for cause, were not available, or were used
> to no avail, to alleviate the effects of the leaks.

*McHenry v. Bell*, No. 13-CV-657 GTS, 2015 WL 2354438, at *9 (N.D.N.Y. May 15, 2015)

(citing *Jovanovic v. City of New York*, No. 04-CV-8437, 2010 WL 8500283, at *10 (S.D.N.Y.

Sept. 28, 2010)).

Plaintiff claims that Walsh's extrajudicial statements were "reported by various media

outlets," thereby "creat[ing] a highly prejudicial and inflamed atmosphere against Plaintiff,"

which in turn "compelled [the prosecution] to continue their case against Plaintiff" and forced

Plaintiff "to waive [his] constitutional right to trial by jury." (Compl. ¶¶ 153–54, 157–58.)

Plaintiff alleges that, following his arrest, Walsh made statements to the press, including: "Make

no mistake—this investigation is not over and will continue into the events that led to this tragic

catastrophe and underlying governmental malfeasance," (*id.* ¶ 62), and "Today is the culmination

of a multi-agency investigation that left no stone unturned," (*id.* ¶ 78).

First, to the extent Plaintiff attempts to include a statement made by Walsh, such a

statement cannot support a denial of a fair trial claim because it was made *after* the trial. The

trial concluded on March 17. (*Id.* ¶ 3; *see generally* March 17 Trial Tr.) The statement

attributed to Walsh was necessarily made after the end of trial because it references Judge

Russo's decision and the disposition of the case: "We are saddened and disappointed by Judge

Russo's decision. . . . The people believe that sufficient evidence was presented to establish the

defendant's guilt beyond a reasonable doubt." (Compl. ¶ 91.) Second, Plaintiff does not allege

that any of Walsh's statements were improper leaks under the canons of ethics or that other

remedies were unavailable or ineffective. Third, Plaintiff fails to clearly spell out how these

statements *in fact* denied his due process rights, *see Powers v. Coe*, 728 F.2d 97, 105 (2d Cir. 1984); rather, he conclusorily argues that the statements "were false, misleading, prejudicial, inflammatory, and therefore had an impact on the result of the trial," (Pl's Opp. 23). In short, even drawing inferences in his favor, Plaintiff has failed to plausibly allege that the deprivation of his right to a fair trial "was not 'too remote a consequence'" of Walsh's statements. *Powers*, 728 F.2d at 105–06 (quoting *Martinez v. California*, 444 U.S. 277, 279 (1980)). Accordingly, Plaintiff's denial of a fair trial claims are dismissed.

7. "Stigma-Plus" Section 1983 (Seventh Claim)

"The Due Process Clause protects against a person's loss of reputation when that loss is associated with the deprivation of a federally protected liberty interest." *Fugelsang v. Dep't of Educ. of New York City*, No. 23-CV-8332, 2025 WL 974276, at *7 (E.D.N.Y. Mar. 31, 2025) (citing *Bd. of Regents v. Roth*, 408 U.S. 564 (1972), and *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994)). "Such a claim is referred to as a 'stigma-plus' claim because it involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." *Balchan v. New Rochelle City Sch. Dist.*, No. 23-CV-6202, 2024 WL 2058726, at *8 (S.D.N.Y. May 7, 2024) (internal quotation marks omitted) (quoting *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006)), *reconsideration denied sub nom. Balchan v. New Rochelle City Sch. Dist.*, 2024 WL 4333417 (S.D.N.Y. Sept. 27, 2024). At the motion to dismiss stage, a plaintiff must (1) "plausibly plead the existence of a stigmatizing statement," that (2) is made publicly and (3) "is 'coupled with the loss of governmental employment or deprivation of a legal right or status, such as a loss of job opportunities.'" *Walker v. Fitzpatrick*, 814 F. App'x 620, 624 (2d Cir. May 19, 2020) (summary order) (quoting *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002)). A plaintiff must also show

that the stigmatizing statement "is capable of being proved false, and that he or she claims is false." *Mudge v. Zugalla*, 939 F.3d 72, 81 (2d Cir. 2019) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)); *Balchan*, 2024 WL 2058726, at *8 ("[A] plaintiff is generally required to raise the falsity of these stigmatizing statements only as an issue, not prove they are false." (citation omitted)). The "stigma" and the "plus" "must be sufficiently proximate," *id.* (quoting *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005) (holding that the statements must be made concurrently with "the loss of employment . . . or the termination or alteration of some other legal right or status"))—this requirement is satisfied where "(1) the stigma and plus would, to a reasonable observer, appear connected," and "(2) the actor imposing the plus adopted (explicitly or implicitly) the statements in doing so." *Velez*, 401 F.3d at 89.

> An actionable stigmatizing statement is one that "call[s] into question plaintiff's good name, reputation, honor, or integrity. Statements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession may also fulfill this requirement."

*Walker*, 814 F. App'x at 624 (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)); *Thurber v. Finn Academy*, No. 20-CV-6152, 2025 WL 834485, at *11 (W.D.N.Y. Mar. 17, 2025) (same). "Federal courts often look to state substantive law of defamation in analyzing the 'stigma' component of a 'stigma-plus' claim." *Dolcine v. Hanson*, No. 17-CV-4835, 2021 WL 949748, at *6 (S.D.N.Y. Mar. 12, 2021).

Plaintiff alleges that, as a result of Walsh's extrajudicial statements, he was "deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, was forced to incur substantial legal expenses, had his personal and professional reputation destroyed, and lost his economic opportunities." (Compl. ¶ 177.) Plaintiff also alleges that he was denied a promotion that he

"was intended to receive" and was "fired from his positions as Code Enforcement Official at Wesley Hills and Building Inspector for New Hempstead." (*Id.* ¶ 71.) The statements made by Walsh that Plaintiff asserts support his claim are:

1. On April 1, 2021, "We have assembled today the investigative leaders from federal state and local law enforcement agencies pursuing this inquiry into the cause of the Evergreen Fire," (Compl. ¶ 73);

2. On June 30, 2021, "Today is the culmination of a multi-agency investigation that left no stone unturned," (*id.* ¶ 78);

3. Following the end of trial, "We are saddened and disappointed by Judge Russo's decision. The people believe that sufficient evidence was presented to establish the [Plaintiff's] guilt beyond a reasonable doubt," (*id.* ¶ 91.)

The first two statements are not stigmatizing statements because they do not mention Plaintiff in any way, and so cannot weigh upon his "good name, reputation, honor, or integrity," *Thurber*, 2025 WL 834485, at *1; *see Linardos v. Juthani*, No. 24-CV-962, 2025 WL 887693, at *10 (D. Conn. Mar. 21, 2025) (finding that the alleged stigmatizing statement was "innocuous" and was not "sufficiently derogatory to injure . . . her reputation" and dismissing a stigma-plus claim); *Schulz v. Commack Union Free Sch. Dist.*, 664 F. Supp. 3d 296, 305–06 (E.D.N.Y. 2023) (finding that plaintiff had not satisfied the first element when he failed to plausibly allege any stigmatizing statement "that even arguably goes to the heart of his professional competence" or "impugn[ed] [his] reputation" and dismissing a stigma-plus claim); *Dolcine*, 2021 WL 949748, at *6 (dismissing a stigma plus claim at summary judgment because plaintiff could "point to no . . . statements" that "attack[] an individual's professional competence" or would "have a negative impact on that individual's future employment prospects").

Individual Defendants argue that the third statement is a "pure and non-actionable expression of opinion." (Indiv. Defs' Mem. 23.) The applicable caselaw supports this position. "[O]nly factual statements are actionable as defamation or libel . . . because New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'" *Solstein v. Mirra*, 488 F. Supp. 3d 86, 96 (S.D.N.Y. 2020) (quoting *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014)). "Determining whether a statement is an allegation of fact or mere opinion is a legal question for the court." *Id.* To determine whether a statement is one of opinion or fact, courts look to four factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication[,] including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 n.7 (2d Cir. 2006) (citation and quotation marks omitted).

The third statement has a precise meaning but is not capable of being characterized as true or false. That the statement begins, "The people believe[,]" weighs in favor of its being an opinion. *See Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 293–95 (E.D.N.Y. 2015) (noting that rhetorical "indicators," such as word choice, inform an inquiry into whether a statement is an opinion); *cf. Shanahan v. Town of Huntington*, 750 F. Supp. 3d 7, 13 (E.D.N.Y. 2024) (finding that the word choice of "worse," "ridiculous," and "largely subjective" indicated that a statement was an opinion); *Sall v. George*, 20-CV-214, 2022 WL 1250854, at *8 (D. Vt. Jan. 11, 2022) (finding the fact that the statement in question began with "'I cannot believe,' strongly suggest[ed] that the words were expressing an opinion"), *report and*

Case 7:24-cv-04470-KMK    Document 85    Filed 09/02/25    Page 32 of 35

*recommendation adopted in relevant part, rejected in part sub nom. Sall v. Seven Days*, 2022 WL 632931 (D. Vt. Mar. 4, 2022). Further, the full context also weighs in favor of the statement being an opinion—Walsh made the statement after Plaintiff was acquitted of all charges, and the statement comments upon the Judge Russo's decision. (*See* Compl. ¶ 91.) As the statement contains an opinion, "the [C]ourt must next determine whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." *Solstein*, 488 F. Supp. 3d at 97 (quoting *Chau*, 771 F.3d at 129). "Pure opinion is a statement of opinion which is accompanied by a recitation of the facts upon which it is based or does not imply that it is based on undisclosed facts," while mixed opinion "is an opinion that does imply a basis in undisclosed facts, or facts known only to the author." *Chau*, 771 F.3d at 129. The third statement does not imply that it was based on undisclosed facts, making it a non-actionable opinion. *See Wiese v. Kelley*, No. 08-CV-6348, 2009 WL 2902513, at *6 (S.D.N.Y. Sept. 10, 2009) (noting that a statement of opinion "is not actionable as a stigmatizing remark" and collecting cases); *Grega v. Pettengill*, 123 F. Supp. 3d 517, 553 (D. Vt. 2015) (finding that the statement "[t]he evidence clearly shows that [plaintiff] was responsible for the death of his wife" and asserted "[plaintiff's] guilt based on the circumstantial evidence presented at the trial" "[did] not lend itself to being objectively characterized as true or false," and was an "opinion about what the evidence showed rather than stating for a fact that [plaintiff] murdered his wife"); *cf. Galgano v. Cnty. of Putnam, New York*, No. 16-CV-3572, 2018 WL 4757968, at *31 (S.D.N.Y. Sept. 28, 2018) (finding that a statement by a prosecutor "criticizing the dismissal of the second indictment and discussing the weight of the evidence presented to a *secret* grand jury proceeding is a mixed opinion, because his statements clearly implied that his opinion was based on undisclosed facts" (alterations adopted) (quotation marks omitted)), *opinion vacated in part on reconsideration sub nom.*

*Galgano v. Cnty. of Putnam*, 2019 WL 2235891 (S.D.N.Y. May 16, 2019). To the extent Plaintiff argues that the third statement is stigmatizing because it implies or speculates that Plaintiff is guilty, "[t]he fact that an innocuous statement may lead to unwarranted speculation does not make the statement stigmatizing." *Linardos*, 2025 WL 887693, at *10 (quotation marks omitted) (quoting *Leichter v. Lebanon Bd. of Educ.*, 917 F. Supp. 2d 177, 190 (D. Conn. 2013)); *cf. Burley v. Bernstine*, No. 21-CV-72, 2021 WL 11108682, at *6 (M.D. Pa. Apr. 13, 2021) (dismissing a stigma-plus claim because plaintiff's speculation as to the stigma, "the potential inability to receive a fair trial[,] is simply insufficient to support a federal defamation claim"), *report and recommendation adopted*, 2021 WL 11108156 (M.D. Pa. May 6, 2021), *aff'd*, No. 21-1956, 2021 WL 3719224 (3d Cir. Aug. 23, 2021); *Filteau v. Prudenti*, 161 F.Supp.3d 284, 293 (S.D.N.Y. 2016) (dismissing a "stigma-plus" complaint where the allegations of "stigma" were "conclusory and speculative"); *Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03-CV-4359, 2013 WL 3491057, at *35 (E.D.N.Y. July 10, 2013) (granting summary judgment on plaintiff's stigma-plus claim and noting in relation that "plaintiff's speculation . . . does not suffice to establish that [the] statements would have prevented [plaintiff] from obtaining employment"), *aff'd*, 568 F. App'x 5 (2d Cir. 2014).

Finally, even if any of these statements was stigmatizing, this claim would still fail. Plaintiff alleges, without detail, that he was fired from his jobs as Code Enforcement Official at Wesley Hills and Building Inspector for New Hempstead. (*See* Compl. ¶ 71). This can suffice as a burden "sufficient to satisfy the stigma-plus standard." *Leise v. Vermont Hum. Rts. Comm'n*, No. 22-CV-9, 2024 WL 2924838, at *9 (D. Vt. June 10, 2024) (noting that "[c]ourts have found . . . termination of plaintiff's government employment" suffices). However, Plaintiff has failed to allege that "the stigmatizing statements were made concurrently in time to [his]

dismissal from government employment." *Patterson*, 370 F.3d at 330; *see also Grega*, 123 F. Supp. 3d at 553 (dismissing a stigma-plus claim because "[p]laintiff ha[d] not adequately alleged that [the] statements were sufficiently proximate to her termination"). Further, the remainder of Plaintiff's allegation is insufficient to satisfy the "plus" prong because "[d]eletrious effects which flow directly from a sullied reputation," like "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typica consequence of a bad reputation," are "normally insufficient to satisfy the 'plus' prong of a stigma-plus claim." *Leise*, 2024 WL 2924838, at *9 (alterations adopted) (quotation marks omitted) (quoting *Valmonte*, 18 F.3d at 1001).

Accordingly, Plaintiff's stigma-plus claim is dismissed.

#### 8. State Law Claims

In light of the Court's dismissal of all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims of defamation and negligent hiring. *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction . . . ."). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Lara-Grimaldi v. Cnty. of Putnam*, No. 17-CV-622, 2022 WL 17541815, at *4 (S.D.N.Y. Dec. 6, 2022) (alteration adopted) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order) ("If all of a plaintiff's federal

claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . .").

### III.  Conclusion

For the reasons set forth above, the Motions are granted, and Plaintiff's Complaint is dismissed.  The Court notes that the DA's Office, Walker, and Sweeney have not been served. (*See* Indiv. Defs' Mem. 1 n.1; *see generally* Dkt.)  Summons issued as to all three.  (Dkt. Nos. 29–33.)  Rule 4(m) provides that a court may, following notice to plaintiff, dismiss defendants who remain unserved 90 days after the complaint is filed.  Fed. R. Civ. P. 4(m).  Plaintiff must serve the DA's Office, Walker, and Sweeney within 30 days of this Opinion & Order.  Failure to do so may result in the Court dismissing sua sponte the DA's Office, Walker, and Sweeney.

The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. Nos. 59, 60, and 64.

SO ORDERED.

Dated:    September 2, 2025
          White Plains, New York

_____

KENNETH M. KARAS
United States District Judge